July 29, 2026

Carol Williams, Individually, and for     :
and on Behalf of the Estate and the
Wrongful Death Beneficiaries of
Anthony David Williams, et al.

            v.               :

    Avco Corporation.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2024-144-Appeal.
(PC 15-4900)

Carol Williams, Individually, and for   :
and on Behalf of the Estate and the
Wrongful Death Beneficiaries of
Anthony David Williams, et al.

v.                 :

Avco Corporation.       :

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ.

# O P I N I O N

**Justice Lynch Prata, for the Court.** The plaintiffs, Carol Williams, individually, and for and on behalf of the estate and the wrongful death beneficiaries of decedent Anthony David Williams, and William Gregory Young and Debra Anne Thigpen, individually, and on behalf of the estate and wrongful death beneficiaries of decedent William Clayton Young (collectively, plaintiffs), appeal from an entry of judgment in favor of the defendant, Avco Corporation (Avco or defendant).[1] Before this Court, plaintiffs argue that the Superior Court erred in granting summary judgment under the General Aviation Revitalization Act of 1994 (GARA). For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] Lycoming Engines is a subdivision of Avco and maintains a principal place of business in Providence, Rhode Island.

- 1 -

**Facts and Travel**

On November 13, 2012, Anthony David Williams and William Clayton Young (decedents) boarded a Piper PA-32-300 Cherokee 6 Aircraft (the aircraft) which was piloted by John Tilton, Jr.  Shortly after takeoff, one of the occupants communicated to air traffic control that the aircraft was experiencing an engine problem.  Tragically, the aircraft crashed, and all aboard were fatally injured.

The aircraft was powered by a single Lycoming IO-540-K1A5 engine (the engine), which was designed by Avco in the 1960s and approved by the Federal Aviation Administration (FAA) in March 1966.  Avco manufactured and shipped the engine to Piper Aircraft Corporation (Piper) in October 1972.  Thereafter, Piper installed the engine in the aircraft and put it into service.  In 1983, the engine was first overhauled by Florida Aircraft Engines.[2]  As part of the overhaul, Florida Aircraft Engines sent the flow divider[3] to Quality Aircraft Carburetors, Inc. (Quality

---

[2] An engine overhaul consists of deconstructing the current engine by an authorized facility that can inspect, test, and repair the engine as necessary.  Lycoming requires the subject engine to be overhauled after 2,000-2,200 hours of operation or twelve years of use and provides an overhaul manual to facilitate the process.  In 1983, the engine received its first overhaul at 2,133 hours of operation.  The engine then received its second overhaul in 2004 at 3,634 hours of operation.  At the time of the accident, the engine had accumulated approximately 817 additional hours of operation since the 2004 overhaul.

[3] A flow divider sits on top of the engine and distributes metered fuel that the servo sends to each of the six cylinders.  It consists of a valve body and several internal sub-components including a plunger valve, a spring, and a flexible diaphragm.  The diaphragm separates the air side from the fuel side of the flow divider to regulate fuel pressure.

Aircraft).  Quality Aircraft's reported service tag indicated that the flow divider was manufactured by Bendix, a corporation unrelated to defendant, and that its part serial number was 961N.  Later, in 2004, Mena Aircraft Engines, Inc. overhauled the engine's flow divider.  Mena Aircraft Engines, Inc. outsourced the work on the flow divider to Mike's Aircraft Fuel Metering Service (Mike's Fuel Metering).  Mike's Fuel Metering's reported service tag also recorded that the flow divider's manufacturer was Bendix and that its serial number was 961N.  In May 2009, Superior Pallet Co. purchased the aircraft.

On November 6, 2015, plaintiffs filed their initial complaint in Providence County Superior Court and asserted claims against Avco for strict liability (count I), negligence (count II), breach of express and implied warranties (count III), and negligent infliction of emotional distress (count IV).  Avco answered and asserted applicable defenses under GARA, a federal statute of repose that bars suits against aircraft manufacturers after eighteen years, subject to certain enumerated exceptions.[4]  In response, plaintiffs filed an amended complaint indicating that they intended to rely on exceptions set forth in GARA.[5]

---

[4] The plaintiffs pursued similar litigation in Mississippi against other defendants not named in this case.  Additionally, there are related actions in Mississippi brought by other plaintiffs.

[5] For our purposes, GARA, as a statute of repose, is subject to two exceptions: (1) a misrepresentation exception and (2) a rolling provision/ "new parts" exception.  To overcome GARA, the former requires a claimant to show that a general aircraft manufacturer knowingly misrepresented, concealed, or withheld from the FAA,

Thereafter, the parties filed discovery motions, and a hearing was held on the issue.[6] On July 8, 2021, the trial justice issued a decision summarizing what transpired at the hearing and his rulings on the motions. Regarding discovery on plaintiffs' theory of liability under GARA's misrepresentation exception, the trial justice found that "[p]laintiffs must, from the outset, meet the pleading requirement under GARA to properly invoke the [f]raud exception."[7] Thus, according to the trial justice, plaintiffs were required to plead specific facts that showed that Avco knowingly misrepresented, concealed, or withheld required information from the FAA. The trial justice reasoned that "[b]ecause [p]laintiffs [had] failed to plead with the requisite specificity, the [f]raud [e]xception to GARA [did] not apply and

---

"required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered[.]" General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552, 49 U.S.C. § 40101 note. The latter requires a claimant to prove that (1) a new part was added to, or replaced an original part on the aircraft within eighteen years prior to the injury, (2) the defendant manufactured the new part, and (3) the new part caused the injury. *See id.*

[6] The two discovery motions before the court were (1) plaintiffs' motion to strike objections to production made by Avco and to compel Avco to provide responses and documents to plaintiffs' first request for production, and (2) Avco's motion to strike certain objections and answers to its discovery requests and to compel more responsive answers and documents. Following a hearing on the motions, both sides filed legal memoranda regarding Avco's GARA defense.

[7] Before this Court, plaintiffs argue that the trial justice misconstrued the law in interpreting § 2(b)(1) of GARA as a "fraud" standard as opposed to a misrepresentation standard. While we address plaintiffs' argument later in our opinion, we note that, although the trial justice used the term "fraud" in analyzing § 2(b)(1), he applied the appropriate standard for misrepresentation under GARA.

[p]laintiffs [were] not now entitled to discovery."  Regarding discovery pertaining to GARA's rolling provision, the trial justice accepted plaintiffs' assertion that the aircraft was equipped with a Lycoming IO-540-K1A5 engine, and that, according to plaintiffs, the accident was caused by the failure of said engine.  Accordingly, the trial justice limited the scope of discovery to documents related to four parts that plaintiffs alleged contributed to the engine failure: (1) the plunger in the flow divider of the fuel system; (2) lack of an overboard line; (3) the fuel servo bellows; and (4) exhaust valves four and six.

Subsequently, the parties engaged in discovery, and Avco moved for partial summary judgment on all counts of plaintiffs' amended complaint to the extent that plaintiffs' theories of liability were based on (1) cracked fuel servo bellows; (2) a loose plunger in the flow divider; and (3) lack of an overboard line.  The trial justice heard arguments on November 14 and 15, 2023, and determined that plaintiffs' claims were barred by GARA.[8]  As a result, the trial justice granted Avco's motion for partial summary judgment on all three parts.

_____

[8] In his decision granting partial summary judgment, the trial justice found that because he determined that plaintiffs did not meet GARA's pleading standard to properly invoke the misrepresentation exception in his earlier discovery decision and that the same issue was before the court for partial summary judgment, "the law of the case doctrine govern[ed]."  Thus, he determined that granting summary judgment on the same grounds was proper without further examination of the issue.  The trial justice emphasized that this Court has noted that "the purpose of the law of the case doctrine is to ensure the stability of decisions and avoid unseemly contests between judges that could result in a loss of public confidence in the judiciary." (Quoting

Avco then moved for summary judgment on the remaining counts of plaintiffs' amended complaint, and arguments were heard on December 6, 2023. During argument, plaintiffs implied that their claims relating to the engine's fuel line and fuel hose, in addition to the remaining exhaust valves, were not barred under GARA's rolling provision. The plaintiffs purported that the fuel line, fuel hose, and exhaust valves four and six were all replaced within the eighteen-year period prior to the accident, bore Lycoming part numbers, and were defective, leading to the accident. The trial justice disagreed, finding that plaintiffs failed to prove that Avco manufactured either the fuel line or the fuel hose. Additionally, the trial justice found that plaintiffs failed to prove that either the fuel line, fuel hose, or exhaust valves were defective such that it caused the accident. Accordingly, the trial justice determined that there were no issues of material fact in dispute and granted Avco's motion for summary judgment. The plaintiffs filed a timely notice of appeal to this Court.

**Standard of Review**

"This Court reviews a decision granting a party's motion for summary judgment *de novo*." *Paolino v. Commonwealth Engineers & Consulting, Inc.*, 318

---

*DiMaggio v. Tucker*, 288 A.3d 981, 986 (R.I. 2023) (brackets omitted).) Although the trial justice recognized that the "law of the case doctrine" may not apply "when a subsequent ruling can be based on an expanded record[,]" he found that "the record ha[d] not expanded between the [discovery] decision and [the partial summary judgment] motion." Therefore, the law of the case doctrine governed.

A.3d 209, 214 (R.I. 2024) (quoting *Nissensohn v. CharterCARE Home Health Services*, 306 A.3d 1026, 1033 (R.I. 2024)). "We assess the matter from the vantage point of the trial justice, viewing the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm." *Id.* at 214-15 (quoting *Nissensohn*, 306 A.3d at 1033). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Citizens Bank, N.A. v. Palermo*, 247 A.3d 131, 133 (R.I. 2021) (deletion omitted) (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019)).

## Discussion

### GARA

An examination of GARA's legislative history reveals that Congress enacted the statute "in response to a serious decline in the manufacture and sale of general aviation aircraft by United States companies." H.R. Rep. No. 103-525(I) (1994). Congress determined that a significant cause of the decline was the "tremendous increase in the industry's liability insurance costs." *Id.* Congress recognized that general aviation manufacturers were suffering from substantial financial losses due to long-tail liability claims attached to aircrafts decades after they were

manufactured and sold. *See id.* Accordingly, Congress's purpose in enacting GARA was to "curb excessive liability costs, while at the same time affording fair treatment to persons injured in aircraft accidents." *Id.*

GARA establishes a statute of repose, barring product liability claims against manufacturers of general aviation aircraft and component parts brought more than eighteen years from the date the product is delivered to its first purchaser. *See GARA*, Pub. L. No. 103-298, 108 Stat. 1552, 49 U.S.C. § 40101 note. GARA provides, in relevant part:

> "[Section] 2. Time Limitations on Civil Actions Against Aircraft Manufacturers.
>
> "(a) IN GENERAL. —Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as manufacturer if the accident occurred—
>
> "(1) after the applicable limitation period[9] beginning on—
>
> "(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
>
> "(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

---

[9] The statute provides that the term "limitation period" means an eighteen-year period. GARA § 3(3).

"(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

"(b) Exceptions. —Subsection (a) does not apply—

"(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered[.]" GARA § 2(a), (b).

The language of the statute, however, makes clear that GARA's protections are not absolute. *See* GARA §§ 2(a)(2), (b)(1). For our purposes, the statute provides two exceptions where GARA will not guard against liability. *See* GARA §§ 2(a)(2), (b)(1). The first is the rolling or "new parts" provision which provides that "[t]he 18-year period begins anew if the death, injury, or damage is caused by any 'new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft.'" *Caldwell v. Enstrom Helicopter Corporation*, 230 F.3d 1155, 1156 (9th Cir. 2000) (quoting GARA § 2(a)(2)). The second is the misrepresentation

- 9 -

exception, where a manufacturer knowingly misrepresents, conceals, or withholds from the FAA "required information that is material and relevant to the performance or the maintenance or operation of [a general aviation] aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered[.]" GARA § 2(b)(1).

**Misrepresentation Exception**

Before this Court, plaintiffs argue that the trial justice erred in limiting the scope of discovery and denying their motion to compel production under GARA's misrepresentation exception based on the pleadings. Specifically, plaintiffs assert that, despite not being able to obtain documents concerning Avco's misrepresentation, concealment, and withholding—given that the documents were not publicly available—their amended complaint satisfied GARA's pleading requirement. The plaintiffs also argue that, even if the amended complaint did not satisfy GARA's pleading requirement, "nothing in GARA precludes litigants from engaging in discovery relevant to [their] claims and defenses."

Conversely, Avco argues that the trial justice correctly determined that plaintiffs must first satisfy GARA's pleading standard to obtain discovery. Avco asserts that, in the amended complaint, plaintiffs failed to plead facts with the requisite specificity to invoke GARA's misrepresentation exception. Avco also argues that plaintiffs should not prevail before this Court because plaintiffs' failure

to further amend their complaint in the trial court to cure the deficiency cannot be cured on appeal.

"This Court reviews questions of statutory interpretation *de novo*." *New England Property Services Group, LLC v. Vermont Mutual Insurance Company*, 331 A.3d 730, 736 (R.I. 2025) (quoting *Sosa v. City of Woonsocket*, 297 A.3d 120, 124 (R.I. 2023)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the legislature." *Id.* (quoting *Sosa*, 297 A.3d at 124). Likewise, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Sosa*, 297 A.3d at 124). "It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in [isolation]." *Id.* (quoting *Sosa*, 297 A.3d at 124). Therefore, "[w]hen performing our duty of statutory interpretation, this Court considers the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Id.* (quoting *Sosa*, 297 A.3d at 124).

GARA explicitly states that the eighteen-year repose period will not apply

> "if the claimant *pleads with specificity the facts necessary to prove, and proves, that the manufacturer * * * knowingly misrepresented * * * or concealed or withheld* from the [FAA], required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system,

subassembly, or other part * * *." GARA § 2(b)(1) (emphasis added).

It is apparent from GARA's plain text that § 2(b)(1) establishes a requisite pleading standard to properly invoke its misrepresentation exception. *See* GARA § 2(b)(1); *see also Crouch v. Honeywell International, Inc.*, 720 F.3d 333, 344 (6th Cir. 2013) ("Plaintiffs' original complaint clearly failed to plead sufficiently specific facts to invoke the § 2(b)(1) exception."). The plaintiffs, however, do not contest that such a standard exists. Rather, they contend that the amended complaint satisfied the pleading requirement. We disagree.

An examination of plaintiffs' amended complaint shows that they merely restated the language of § 2(b)(1) in their theories of liability against Avco for negligence and breach of express and implied warranties. Paragraph 92(t) of plaintiffs' amended complaint states that Avco was negligent in "mispresenting, concealing, and/or withholding material information from regulatory authorities of the problems with, and defects in the engine * * *." Parallel language lies in paragraph 107(t) of the amended complaint, regarding Avco's alleged breach of warranties. This is insufficient. GARA's pleading standard required plaintiffs to *provide specific facts* necessary to prove that Avco knowingly misrepresented, concealed, or withheld certain information from the FAA. *See Tillman v. Raytheon Company*, 430 S.W.3d 698, 704 (Ark. 2013) ("GARA expressly provides that it is the claimant who must set out the facts to show that the fraud exception applies and

must do so with specificity. * * * GARA places the burden on [plaintiff] to plead facts with specificity and to prove that the fraud exception applies."). Therefore, plaintiffs' iteration of the statute's language merely asserted as conclusory statements was inadequate to trigger the misrepresentation exception. *See McAuliffe v. Robinson Helicopter Company*, 173 F.4th 1029, 1036 (9th Cir. 2026) (holding that the plaintiffs failed to allege the misrepresentation exception with the requisite specificity because "[g]eneralized averments * * * are not enough to overcome GARA's significant obstacles"). As such, we hold that the trial justice did not err in limiting the scope of discovery relative to § 2(b)(1) on the grounds that plaintiffs' amended complaint failed to plead facts with the requisite specificity to invoke GARA's misrepresentation exception.

Additionally, plaintiffs argue that the trial justice erred in finding that GARA preempts plaintiffs' "discovery efforts" which, they argue, is contrary to Rule 26 of the Superior Court Rules of Civil Procedure. The plaintiffs assert that the trial justice's failure to correctly apply Rhode Island discovery rules denied plaintiffs the ability to gather the necessary information to prove misrepresentation. The plaintiffs' argument is without merit.

"While we review the scope of Rule 26 of the Superior Court Rules of Civil Procedure *de novo*, a trial justice has 'broad discretion' in granting or denying discovery motions, and 'this Court will not disturb that discretion save for an abuse'

- 13 -

of it." *Mile v. Kirkbrae Country Club*, 331 A.3d 1003, 1006 (R.I. 2025) (brackets and deletion omitted) (quoting *State v. Lead Industries Association, Inc.*, 64 A.3d 1183, 1191 (R.I. 2013)). "'If legally competent evidence exists to support the trial justice's determination, we will affirm it' unless errors have so 'infected the validity of the proceedings as to warrant reversal.'" *Id.* (brackets omitted) (quoting *Pastore v. Samson*, 900 A.2d 1067, 1073-74 (R.I. 2006)).

Indeed, there is no dispute that GARA was enacted as a statute of repose to preclude product liability claims against general aviation manufacturers. The plaintiffs, however, assert that the trial justice erred in requiring them to "plead and prove '[f]raud on the FAA' as a prerequisite to discovery[,]" but plaintiffs are mistaken. The trial justice properly applied GARA, which requires a more demanding pleading standard and does not disturb Rule 26.

Notwithstanding our generalized pleading standard, the plaintiffs failed to satisfy GARA's more demanding pleading standard. The amended complaint did not identify one instance where Avco either misrepresented relevant information to the FAA or failed to disclose such information. While plaintiffs assert that Avco was on notice of similar IO-540 engine accidents and thus was aware of a defect in the engine model, plaintiffs do not point to any specific evidence to show that Avco mispresented, concealed, or withheld such information from the FAA and/or that Avco's misrepresentation caused the subject accident. *See McAuliffe*, 173 F.4th at

- 14 -

1036 ("The complaint also fails to explain how the alleged misrepresentations were 'material and relevant' to the performance, maintenance, or operation of the [component part], or any other part of the [aircraft] and critically omits any specific allegations about how any such misrepresentations are 'causally related to the harm which the [plaintiffs] allegedly suffered.'") (quoting GARA § 2(b)(1)).[10] Therefore, the trial justice properly restricted discovery pertaining to the misrepresentation exception. Accordingly, we conclude that the trial justice did not err in finding that plaintiffs were required to meet GARA's pleading requirement prior to enabling discovery.

We further reject plaintiffs' argument that the trial court erred in granting summary judgment on plaintiffs' theories of liability relative to GARA's misrepresentation exception. Because we discern no error in the trial justice's determination that plaintiffs' pleadings were insufficient to invoke § 2(b)(1), we conclude that the resulting grant of summary judgment was proper.

---

[10] *See also DiLibero v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 1013, 1016 (R.I. 2015) (noting that when a trial justice examines a plaintiff's complaint in deciding a motion to dismiss, "allegations that are more in the nature of legal conclusions rather than factual assertions are not necessarily assumed to be true") (emphasis omitted) (quoting *Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Department*, 899 A.2d 1258, 1262 n.2 (R.I. 2006)).

**Rolling Provision/ "New Parts" Exception**

The plaintiffs argue that the trial court erred in granting summary judgment on plaintiffs' theories of liability related to GARA's rolling provision. The plaintiffs contend that while Avco did not physically make the parts replaced during the engine's 2004 overhaul, the parts were specified by Lycoming for the engine model at issue and bore Lycoming serial numbers.

In opposition, Avco argues that plaintiffs conducted extensive discovery yet failed to prove that GARA's rolling provision applied to the present case. Avco argues that plaintiffs "had a full and fair opportunity to conduct discovery for purposes of determining whether any part manufactured by Avco was installed within 18 years of the accident and whether any such part caused the accident." Avco also asserts that "[p]laintiffs participated in at least five wreckage inspections in their search for a part that would trigger GARA's new parts exception against Avco. But [p]laintiffs never unearthed any such part." Given that plaintiffs failed to establish a part that invoked GARA's rolling provision, argues Avco, the trial justice did not err in granting its motion for summary judgment as to this exception.

To satisfy GARA's rolling provision, a plaintiff must prove that (1) a new part was added to, or replaced an original part on the aircraft within eighteen years preceding the injury, (2) the defendant manufactured the new part, and (3) the new part caused the injury. *See* GARA § 2(a)(2); *McAuliffe*, 173 F.4th at 1035 ("[T]he

rolling provision only restarts the repose period where the '[new] part which replaced another component, system, subassembly * * * is alleged to have caused death, injury, or damage.'") (quoting GARA § 2(a)(2)). If plaintiff successfully meets this burden, then the eighteen-year limitation period, for which liability claims may be brought against the manufacturer of such a part, restarts and GARA does not apply. *See* GARA § 2(a)(2).

In the instant case, during the discovery stage, the trial justice determined that "because the [n]ew [p]arts [e]xception does not require [p]laintiffs to satisfy a pleading standard like in the [f]raud [e]xception, [the] [c]ourt may find that they are entitled to discover, in part, the requested documents in order to determine whether the [exception] applies." Accordingly, the trial justice limited the scope of discovery to four parts identified by plaintiffs, allowing them to determine whether any such part contributed to the engine failure. The parts were: (1) the plunger in the flow divider of the fuel system; (2) the lack of an overboard line; (3) the fuel servo bellows; and (4) exhaust valves in cylinders four and six. Subsequently, the trial justice also allowed plaintiffs to determine if either the engine's fuel hose or fuel line caused the accident.

Avco then moved for partial summary judgment as to plaintiffs' theories of liability premised on a loose plunger in the flow divider, lack of an overboard line, and cracked fuel servo bellows, which the trial justice granted. The trial justice

reasoned that plaintiffs failed to prove that any of the three identified parts could overcome GARA's repose statute. The trial justice then granted summary judgment on plaintiffs' remaining theories of liability related to the exhaust valves, fuel hose, and fuel line, grounded on a similar rationale. We discern no error in the trial justice's granting of summary judgment.

First, with respect to the fuel servo bellows, the trial justice indicated that during the hearing on Avco's motion for partial summary judgment, plaintiffs conceded that the fuel servo bellows were not the cause of the accident. Indeed, the record reveals that at the hearings on November 14 and 15, 2023, plaintiffs admitted that the fuel servo bellows were not the cause of the accident. Plaintiffs' counsel stated that "[t]he fuel servo bellows, plaintiffs' experts have, after a lot of investigation and research, have ruled that out as being causative." Given plaintiffs' clear admission, the trial justice properly granted summary judgment as to the fuel servo bellows.

Second, the trial justice determined that the plunger in the flow divider of the fuel system did not constitute a "new part" under GARA. At the outset, the trial justice considered the flow divider as consisting of three internal components: the plunger,[11] the diaphragm, and a self-locking screw.[12] With respect to the plunger

---

[11] The plunger is also commonly referred to as a "plunger valve" or "valve stem."
[12] The trial justice rejected plaintiffs' contention that the replacement of the flow divider's diaphragm during the 2004 overhaul constituted a newly installed part to

valve, the trial justice found that the plunger valve and body of a flow divider are a "matched assembly." Therefore, they "cannot be purchased or replaced separately * * *." Thus, following the chronological journey of the flow divider, the trial justice found that the aircraft maintained the same flow divider for a minimum of twenty-nine years preceding the accident. We agree.

Indeed, the Overhaul Manual and Illustrated Parts List indicates, with caution to the reader, that the plunger valve and body of the flow divider are a matched assembly. Therefore, "[d]amage to either part necessitates replacement of the complete flow divider." Using the overhaul manual as guidance, we, like the trial justice, conclude that following the life span of the flow divider will be the best indicator of the life span of the plunger valve. According to the engine's logbook, the flow divider was overhauled by Quality Aircraft in the 1983 overhaul. Quality Aircraft's service tag for the repair indicated that the manufacturer of the flow divider was Bendix and recorded the part serial number as 961N. Later, during the

_____

restart the eighteen-year limitation period under GARA. The trial justice stated that "[c]ontrary to [p]laintiff[s'] argument, it is well settled that the overhaul of an aircraft part or component does not render it 'new' for purposes of GARA." The trial justice also reasoned that none of plaintiffs' experts opined that the diaphragm was defective. The trial justice further noted that assuming *arguendo* that the diaphragm was defective, plaintiffs had not offered evidence to show that Avco manufactured that part. Rather, experts determined that a screw that was designed to secure the flow divider's diaphragm to its plunger valve was loose. Nonetheless, the trial justice determined that the screw was an original part and had not been replaced within the eighteen-year period.

- 19 -

2004 overhaul, Mike's Fuel Metering serviced the engine's flow divider and the service tag for that repair also recorded Bendix as the manufacturer and the part serial number as 961N. Therefore, we conclude that, because the serial number on the flow divider was the same on the service tags for both the 1983 and 2004 overhauls—there is no evidence to suggest that the flow divider was repaired after 2004—the flow divider and, thus, the complementary plunger valve were original parts, not newly installed within eighteen years preceding the accident.

Third, with respect to plaintiffs' theory that the lack of an overboard line caused the accident, the trial justice found that plaintiffs' theory related to a design defect as opposed to a defective new part. The trial justice stated that "[t]he absence of a design feature cannot be considered a newly installed part under GARA's Rolling Provision." As we have stated *supra*, to satisfy GARA's rolling provision, a plaintiff must prove that a new part was added to or replaced an original part on the aircraft. Therefore, we are not persuaded by plaintiffs' argument that the absence of a part fits this description given that courts have limited the scope of GARA's rolling provision to defective new parts, rather than design or failure to warn defects. *See Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088 (9th Cir. 2001) ("[A] failure to warn is decidedly not the same as replacing a component part with a new one. It does not allow the Survivors to bypass the GARA bar."); *see also LaHaye v. Galvin Flying Service, Inc.*, 144 F. App'x 631, 633 (9th Cir. 2005) (holding that "because the

allegedly defective aspect of the design had been in the marketplace for over eighteen years, it was barred by GARA's statute of repose").

Next, we consider whether the engine's fuel hose and fuel line meet the criteria of GARA's rolling provision. Regarding the fuel hose, the trial justice determined that "[d]espite the replacement of the fuel hose within eighteen years of the accident, there is no evidence supporting [p]laintiffs' argument that Avco is the manufacturer. Instead, it is undisputed that the fuel hose was manufactured by either Stratoflex or Aeroquip." We discern no error in his determination. The record reveals that plaintiffs' accident investigation expert, Allen Fiedler (Mr. Fiedler), provided in his report that as part of the 2004 overhaul, "all engine compartment hoses were replaced." Mr. Fiedler, however, did not report or opine that the replacement fuel hoses were manufactured by Avco. Rather, in his deposition, the following colloquy took place:

> "Q. And is it fair to say then that you're not offering an opinion in this case that the engine compartment hoses that were installed were new Lycoming parts, correct?
>
> "A. I don't recognize Lycoming as the source of the fuel hoses. They're usually Stratoflex or Aeroquip.
>
> "* * *
>
> "A. Let me, let me add to that. They may have been purchased through Lycoming, but the true supplier would be Aeroquip or Stratoflex.

"Q. And you don't have the ability to say one way or the other whether they were purchased through Lycoming or from another supplier, correct?

"A. Yeah, correct. Without the qualification in the logbook entry, I would have no idea."

Therefore, because the trial justice found Mr. Fiedler's testimony to be credible and uncontradicted, his conclusion that Avco was not the manufacturer of the fuel hose was determinative.

Regarding the fuel lines, Mr. Fiedler also stated in his report that as part of the 2004 overhaul, Mena Aircraft Engines "used new Lycoming parts including all six cylinder kits, [and] all six fuel injection lines * * *." The plaintiffs sought thereby to show that Lycoming was the manufacturer of the fuel lines. However, even if plaintiffs were successful in establishing Lycoming as the manufacturer, they were unable to prove causation. In his deposition, Mr. Fiedler declined to offer his opinion as to whether there was a design or manufacturing defect with respect to any engine compartment hose. Likewise, Steven Maier, plaintiffs' accident reconstructionist testified at his deposition that he was not able to identify a known defect with respect to the fuel lines that caused or contributed to the accident. *See American Commerce Insurance Company v. Porto*, 811 A.2d 1185, 1195 (R.I. 2002) ("The traditional tort concept of proximate cause focuses on legal culpability for the accident, and whether the conduct of the alleged tortfeasor in any way produced plaintiff's injuries. 'Proximate cause in tort cases is established by showing that but for the negligence

- 22 -

of the tortfeasor, injury to the plaintiff would not have occurred.'") (brackets omitted) (quoting *English v. Green*, 787 A.2d 1146, 1151 (R.I. 2001)). Accordingly, absent a showing of causation, plaintiffs failed to establish a claim under GARA's rolling provision as to the fuel lines. *See McAuliffe*, 173 F.4th at 1035 ("The district court appropriately imposed a causation requirement, however, as the rolling provision only restarts the repose period where the 'other part which replaced another component, system, subassembly * * * is alleged to have caused * * * death, injury, or damage.' We have interpreted the causation requirement as one of proximate cause.") (quoting GARA § 2(a)(2)).

Lastly, we address the exhaust valves in cylinders four and six. The trial justice found that plaintiffs failed to establish that the exhaust valves in cylinders four and six were defective and thus, GARA's rolling provision criteria was not met. We discern no error in this finding. As mentioned *supra*, Mr. Fiedler reported that all six cylinders kits were replaced with new Lycoming parts as part of the 2004 overhaul. Nonetheless, given that none of plaintiffs' experts testified or provided in their reports of the accident that either exhaust valves in cylinders four or six were defective, the element of causation was not met. *See Caldwell*, 230 F.3d at 1158. Accordingly, absent any remaining issues in dispute, the trial justice appropriately granted summary judgment in favor of Avco.

**Right to Justice and Jury Trial**

Finally, plaintiffs argue that the trial court violated their right to justice under article 1, section 5 of the Rhode Island Constitution. The plaintiffs cite to this Court's decision in *State v. Almonte*, 644 A.2d 295 (R.I. 1994), to argue that "statutes prohibiting discovery violate the litigants' Right to Justice." Specifically, plaintiffs contend that the trial court's discovery orders violated their right to justice because the trial court "preclude[d] litigants from obtaining and introducing material evidence, thereby preventing litigants from effectively presenting their claims before the trier of fact." (Quoting *Bartlett v. Danti*, 503 A.2d 515, 518 (R.I. 1986).)

Article 1, section 5 of the Rhode Island Constitution requires:

> "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

"[T]his Court has recognized that the purpose of article 1, section 5 is to 'forbid the total denial of access to the courts for the adjudication of a recognized claim.'" *Zab v. Rhode Island Department of Corrections*, 269 A.3d 741, 748 (R.I. 2022) (brackets omitted) (quoting *Bandoni v. State*, 715 A.2d 580, 595 (R.I. 1998)). Thus, the plaintiffs' argument distorts the principle behind the right to justice. *See Zab*, 269 A.3d at 750 (holding that the civil death statute violated article 1, section 5 "because

it completely deprive[d] individuals of an expressly enumerated constitutional right"—the right to gain access to the courts). It is clear from the record before us that the plaintiffs' access to the courts has not been denied or curtailed. Therefore, the plaintiffs' claims that the trial justice's ruling implicates the right to justice provision is misguided.

## Conclusion

For the reasons stated herein, we affirm the Superior Court judgment. The papers in this case may be remanded thereto.

## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Carol Williams, Individually, and for and on Behalf of the Estate and the Wrongful Death Beneficiaries of Anthony David Williams, et al. v. Avco Corporation. |
| **Case Number** | No. 2024-144-Appeal.<br>(PC 15-4900) |
| **Date Opinion Filed** | July 29, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Cynthia M. Devers, *Pro Hac Vice*<br>Lauren E. Jones, Esq. |
| | For Defendant:<br><br>Nicole J. Benjamin, Esq. |